1-10-01-1-09 H & H Electric v. Castaneda Good afternoon, Your Honors. My name is Bill O'Brien on behalf of Respondent H & H Electric, Castaneda. Respondent is appealing the Commission decision before this Court today on the issues of causation, payment of petitioner's benefits, and penalties and fees that were awarded. Keep your voice up, please. Yes, sir. Accident was not disputed by the Respondent. However, the issues of causation and penalties and fees are one of the main issues today that I would like to discuss on the appeal. Both issues carry the standard of manifest weight and have overlapping facts, and I will go into those. Obviously, this manifest weight standard is that there's sufficient factual evidence in the record to support the Commission's decision. Respondent argues that the record does not have such sufficient evidence to support the finding of causation and the finding that Respondent was unreasonable and vexatious in its termination of benefits. And therefore, awarding penalties. There are numerous facts, mainly involving inconsistencies in the record that we will discuss, several of which I will stand on my brief, which include whether or not the petitioner actually had prior low back pain prior to his alleged injury of October 4th of 2007, whether his pain medication that he was prescribed during his course of treatment helped, and whether the physical therapy he was prescribed helped or hurt him. The main inconsistencies that I would like to discuss are the mechanism of injury and the comments made by the petitioner's treating physicians based on his reports to them. His first treatment was with Dr. Lian Yang at Loyola Medical Center on October 9th of 2007. This was five days after his alleged date of accident. At that time, he states that his mechanism of injury was out of the blue and anywhere from 10 to 14 days ago and possibly due to lifting a pipe. Now, this is suspicious to Respondent for a number of reasons. One, out of the blue, obviously, does not indicate that he's alleging a workers' comp injury. And 10 to 14 days ago does not correspond with the alleged date of accident. However, despite this, Respondent stipulated that there was an accident, and that accident that the petitioner continued to report was from lifting a pipe at work. Was there any evidence in the record adduced on either side, including on behalf of the Respondent, that indicated that the claimant had any lower back problems or difficulties before October 4th, 2007? Well, he claims that the injury occurred on October 4th, 2007. But further on in his medical records, he stated that he had an injury in September of 07. That's a reference of September of 07, and as well as the 14th, 10th, 14th. A reference to work or what? It's a back injury. It's a September of 07. It has the same connection with what? No. Okay. Throughout his course of treatment with Dr. Yang, she did recommend he undergo an MRI, which he did have in December of 2007. And based on her review of the MRI, she diagnosed him with a disc herniation. Also throughout her course of treatment with the petitioner, Dr. Yang noted several issues that she felt were pertinent enough to note in her medical records, specifically that the petitioner had strange ideas about his treatment. She did catch him in a lie about a no-show appointment, that he was argumentative, difficult to follow, illogical, and tangential. That is over the course of several months of treatment. And that's Yang? Correct. What about Dr. Lorenz? Dr. Lorenz, over the course of four months, saw him three times in February, April, and May. And his first treatment was on February 20, 2008. And at the time he treated with Dr. Lorenz at that first visit, the petitioner stated that his injury was from bending over, cutting a pipe. And that differs drastically from what he had previously told Dr. Yang, Dr. Ranella, ATI Physical Therapy, and Dr. Singh as to how he injured his back. But Dr. Lorenz did give an opinion that the claimant's disc herniation was caused by the accident on October 4th, did he not? He did. But he based it on a repetitive trauma injury as well. And there is no claim for repetitive trauma injury. The arbitrator did not find a repetitive trauma injury, and there was no notice of repetitive trauma injury. So the claimant, though, presented two medical opinions on causal connection, correct? Correct. Dr. Ranella, Yang, and Lorenz, was there anything contrary on the other side? As far as? Disputing that, raising any inconsistencies? No. Dr. Singh responded to Section 12 examiner even opined the petitioner's condition as of January 31st of 08, based on the lifting of the pipe mechanism of injury, was related, and benefits were paid until the IME report was obtained. A week after that, I'm sorry, Dr. Singh had reviewed the MRI at the time of the IME on January 31st of 08. It is noted in his report. A week later, Dr. Yang, who had also reviewed the MRI through her evaluation of an orthopedic consult that petitioner had with Dr. Ranella also at Loyola, Dr. Yang reviewed Dr. Ranella's report and then subsequently changed her diagnosis from a disc herniation to that of chronic low back pain. And that was based, even though she had reviewed the MRI, she changed her diagnosis. So as of the last visit with Dr. Yang on February 6th of 08, Dr. Yang had diagnosed the petitioner with chronic low back pain. Dr. Ranella and Dr. Singh had both diagnosed a strain at the time of the IME and the last treatment with Dr. Yang on February 6th. There was only one treater to date who had diagnosed a disc herniation, and that was the MRI tech. There's no evidence that the person that reviewed an MRI was a physician, and the records do not support that he was a physician. So Dr. Lorenz, going to his treatment two weeks after he had been, after the petitioner had visited Dr. Yang for the last visit, Dr. Lorenz had the initial examination with the petitioner on February 20th of 08. He recommended one injection, and if that injection did not help, then he immediately recommended surgery. That was on the very first visit, based on new mechanism of care. All right. So in essence, I mean, to cut to the chase, you have, I think, from an objective standpoint, some conflicting medical testimony. Correct. And isn't it up to the commission to determine the weight and the credibility to be given to the different medical opinions? It is. And we believe that's where it was, where they found that Dr. Singh was not credible, is where that finding was against the manifest weight, and clearly reflected on the record that basically, his diagnosis, recommended for treatment, and MMI status were agreed to with Dr. Ronella, and for the most part, Dr. Yang. The only difference between Dr. Singh and Dr. Ronella, who up until the IME appointment were the only orthopedics that had treated him, were that Dr. Ronella was not an orthopedic arbitrator, and Dr. Singh had stated that based on his exam, the hyper-exaggeration of symptoms and symptom magnification, as well as the physical therapy notes that indicated he had not put forth full effort, that he was able to return to work full duty. There's no evidence that Dr. Ronella reviewed these reports, no evidence he reviewed the MRI, and recommended an FCE, which Dr. Ronella thought was not necessary. And what about the penalties and fees? The penalties and fees, the same exact arguments. You know, based on all that information, the petitioner's inconsistencies throughout his treatment, his new mechanism of injury to Dr. Lorenz, as well as his near identical diagnoses to Dr. Ronella and Dr. Yang, save the FCE, I'd believe that Dr. Ronella was not an orthopedic arbitrator. But the record is clear that the respondent was not unreasonable or vexationist in its termination of benefits based on Dr. Singh's report, and any finding that it was is against the benefits. Did the employer ever provide the employee of the claimant with a written explanation for the termination of benefits? I don't believe so, no. Isn't that required? Under the Act, yes. And hasn't the fair to provide a written explanation for the benefits been a basis to impose penalties? I believe it has in certain situations, but I believe you have to look at the totality of the circumstances in the denial of benefits, as well as that the lack of written notification is just one factor, and that there were multiple other factors that led to the basis of termination that need to be considered as well. And that's the reason for the termination. Thank you. Counsel, please. Good afternoon. May it please the Court. Counsel, my name is John Castaneda. I'm here on behalf of Mahdi Boustami. Your Honors, as we know, the appeal on this basis is whether or not the Circuit Court, and actually the Industrial Commission's decision, is against the manifest weight of the evidence. The issue mainly in this case is causation, whether there's sufficient factual evidence in the record to support the Commission's determination of a causal relationship. And we know that the Caterpillar's case states that whether some act or phase of the employment was a cause of the fact, or whether there's sufficient factual evidence to support the Commission's determination of a causal relationship. In this case, whether or not the Petitioner's stipulated work accident of October 4, 2007, might or could have been a cause of his L4-L5 disc herniation. The records submitted into evidence include the records of Dr. Gang of Loyola. Dr. Gang issued a letter December 31, 2007, indicating that the disc herniation likely was the cause of Mr. Boustami's back pain. Later on, Dr. Lorenz opined that it was his opinion that there was a causal relationship between the accident of October 4, 2007 and the L4-L5 disc herniation. Dr. Ranella and Dr. Singh also stated there was a causal relationship, but on the basis of a different diagnosis. Their opinion was that Mr. Boustami suffered a back strain, which was causally related to his October 4, 2007 accident. However, as the arbitrator pointed out, Dr. Ranella did not review, or at least it was his interpretation, he did not review the MRI of December of 2007, December 28th, and Dr. Singh was the only physician who did review the MRI who stated it did not show a disc herniation. Both Dr. Lorenz and Dr. Gang opined that there was a L4-L5 disc herniation. If we go and look at the exam of Dr. Lorenz, he performed an examination and found that the petitioner was suffering from pain in his right leg and tenderness in the sacroiliac portion in the right leg, which would correspond to an L4-L5 lateral disc herniation. Mr. Boustami testified to the best of his ability. He is not a machine. He is not going to repeat exactly to every physician, word for word, something that happened six or seven months ago. The commission took into account that Mr. Boustami described his injury to the providers. The providers noted the description of the history and description of the work activities and found that there was sufficient evidence given by Mr. Boustami to support the physician's opinions that there was a causal relationship. In fact, if you note Dr. Singh's Section 12 exam, Mr. Boustami specifically stated to Dr. Singh that he was lifting a pipe when he injured himself on October 4th, 2007. Actually, he called it a pole, P-O-L-E. Dr. Singh found that the petitioner, in this case Mr. Boustami, did sustain an injury causally related to his condition, to his actions. And again, as I stated before, Dr. Singh disagreed that there was a disc herniation based on his review of the MRI. However, there was a second MRI in this case, which also confirmed the disc herniation in Mr. Boustami. And nowhere in the record is it indicated that Dr. Singh ever reviewed the second MRI on this case to opine whether or not he still thought he suffered from a back strain. So I think that the medical evidence and the testimony of Mr. Boustami sufficiently creates a record and supports the Commission's determination that there was a causal connection between the accidental injury of October 4th, 2007 and his L4-L5 disc herniation. What about the penalties and fees? Justice Stewart, I think in that case, the reason I believe the Commission awarded penalties and fees were for several reasons. One was there was no written explanation provided upon termination of benefits to Mr. Boustami or his representative why benefits were terminated. Yes, the respondent in this case did pay some benefits. They paid from approximately November 1st until February of 2008. However, they provided no explanation to the petitioner or his representative. They did not begin paying benefits on October 19th when the unrebutted testimony is that the respondent sent Mr. Boustami home because they were worried about liability. Secondly, the opinion they rely on to terminate his benefits, although it was a medical opinion, it was flawed. Dr. Singh was the only physician who opined that there was no disc herniation. Dr. Singh, however, also stated that he did not think Mr. Boustami needed any further treatment and was at MMI. Despite the fact that Dr. Ranella, even though he found Mr. Boustami only suffered a back strain, was suggesting an FCE. And despite the fact that Dr. Yang indicated in her opinion that he was suffering from chronic pain and may not be able to return to the same type of impairment. So in the respondent's argument to avoid the imposition of penalties and fees, they're sort of hanging their head on Dr. Singh. Why can't they do that? Well, Justice Stewart, they're more than welcome to hang their opinion on medical. For the record, I'm Stewart. I hope Justice Hudson doesn't take offense. I hope one of us isn't a ventriloquist here. I apologize. Justice Hudson, I apologize. They are more than welcome to rely on the opinions of a physician. But as the case law has pointed out to us, that reliance still has to be reasonable under the circumstances. And in this case, where we have a physician who is opining there's no disc herniation, when we have a radiologist and two other physicians stating that there is, and in a situation where we have their own Section 12 examiner stating that Mr. Boustami's condition was causally related, then I think the commission can take those factors into account and find that that reliance was not reasonable. And I believe the case law states that if the reliance is not reasonable, then penalties and fees should be taken into account. And if the reliance is not reasonable, then the penalty should be imposed. Thank you. Yes. Just briefly. I just wanted to state one more time that at the time of Dr. Yang's final visit with the petitioner on February 6th of 08, there was only one patient with a disc herniation, and that was the technician that read the MRI report. Dr. Yang initially diagnosed the petitioner with a disc herniation, but retracted that diagnosis to that of chronic low back pain. Dr. Ranella diagnosed him with a lumbar strain. Dr. Singh diagnosed him with a lumbar strain as well. Dr. Bardfield, the physician who did the injection, diagnosed him with lumbar radiculopathy. There is no mention of a disc herniation. Dr. Singh diagnosed him with a disc herniation, and then for some reason, when he had an MRI that was only four months old, did another MRI, a second MRI, which I believe Mr. Castaneda is referring to, on April 14th of 08, does not show a disc herniation. The impression stated on the April 17th MRI report is an L4, L5 right foremanal and extra foremanal protrusion. With moderate right foremanal stenosis, annular tear and encroachment upon the right L4 nerve root. There is no mention of a disc herniation at all, and subsequent to that, Dr. Lorenz never mentions a disc herniation diagnosis. There is one follow-up visit after the second MRI on May 7th of 08, and Dr. Lorenz does not provide an amended diagnosis or any diagnosis in his report. He only notes the MRI findings. And with that, respondent requests that the causation opinions as well as the penalties and fees and other arguments reflected in this brief be reversed. Thank you.